Dunkin, C1l,
dissenting.—I concur in this judgment, because I think the certificate was sufficiently explicit, and that the deed, having been recorded in the lifetime both of the husband and wife, was a valid renunciation according to the terms of the statute. But I am not prepared to say that recording was unnecessary to its validity, even between the parties.
This is not the deed of a party sui juris, who requires no protection from the law, and who, of course, requires no record to inform him of his own deed. Nor is it even the act of a minor, which may, or may not, be affirmed when he arrives at maturity. The deed of a jeme covert is a mere nullity—she has no legal existence. In Reid v. Lamar, (Columbia M. S., December, 1846,) which was a case of marriage settlement, *578 we held that she had no authority, but as derived from the deed, that she was the creature of the deed. Her act had no validity or legality, but as declared legal and valid by the instrument authorizing her to contract. A married woman having then no legal existence, this enabling statute was passed, which imparted validity to her act, renouncing her inheritance on certain conditions. “Such renunciation,” declares the act, “shall not be considered as being complete, or legal, until the same shall be recorded in the office of Mesne Conveyance, or office of the Clerk of the Court,” &c. By the principles of the common law, her deed was a nullity. By the provisions of the act, it shall not be considered legal, until the same shall be recorded. Until that done, it has the same consideration, and no other or higher considerations, than it would have received before the act was passed.
It seems difficult to advert, to the then existing state of the law, and yet adopt the conclusion that this proviso was merely a part of the registry act. By the Act of 1785, passed ten years previously to this law, it was declared that no conveyance of lands should be valid to pass any estate of inheritance, &c.s which was not recorded within six months of the execution thereof, “ exceptas to the parties themselves, and, their heirs.” It cannot he doubted that the deed of the husband and wife, as well as the renunciation of inheritance of the latter, fell strictly within the provisions of the Act of 1785, and, in order to bar the rights of creditors and subsequent purchasers, should be recorded within six months, although it would be valid, by the terms of the act, as between the parties themselves and their heirs. According to the construction now given, the formal proviso in the Act of 1795, which declares that “such renunciation shall not be considered as being complete or legal until the same shall be recorded in the office of Mesne Conveyance,” was simply superfluous, or nugatory. I am unwilling to suppose it either the one, or the other. In the language of Chancellor Harper, 1 Hill, C. R., 106—“the words are too plain to admit of question. Whatever reasons may have governed the Legislature in making the enactment, I cannot imagine that the words have any other meaning, than that the renunciation shall *579 have no operation, or effect whatever, even between the parties. The security and protection of the woman must have been, in some way, the object of the provision.” Concurring fully in these observations, I would only illustrate them, by supposing that a marriage settlement, which authorized a wife to act, had nevertheless declared that her deed should “not be complete or legal, until the same was shewn, or notice thereof given, to her father, if alive, or to her trustee; could it be maintained that a deed of the feme covert, divesting herself of her estate, would be complete and legal, though it had never been exhibited, or made known, to her father, or trustee? Nothing more, it is true, was to be done by the wife. It was in the exclusive power of the alienee to make known to the lather or trustee, that he had procured a renunciation of the estate, and, thereby, render his title complete and legal, is it, therefore, complete and legal, although he had always kept his deed in his escritoire, and never communicated it to the friends of the wife? The inquiry need not be made, what they could have done, even if they had known of the wife’s alienation; although it might not be difficult to conceive a very satisfactory reply to the inquiry. But the party must stand, not alone on the deed of alienation, for that, of itself, is a nullity, but on the authority to execute the deed, and is bound by its terms.
Thinking that the purchaser, in this case, had complied with the provisions of the Act of 1795, and that the feme covert was thereby effectually divested of her estate, I agree in the conclusion that the defendant below was entitled to a non-suit, or that a new trial shouldbe granted, asmovcdintlieLawCourtof Appeals.